UNITED STATES DISTRICT COURT       O
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| RIGOBERTO HERNANDEZ, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 7:12-CV-480 |
| § | |
| ALLSTATE TEXAS LLOYDS, § | |
| § | |
| Defendant. § | |

## ORDER

Numerous motions are pending before the Court, including: (1) the "Defendant's Motion for Summary Judgment"[1] ("Motion for Summary Judgment") filed by Defendant Allstate Texas Lloyds ("Allstate"); (2) the "Notice of Unsuccessful Mediation and Motion to Enter Scheduling Order"[2] ("Motion for Entry") filed by Plaintiffs Rigoberto Hernandez and Natalia Castillo ("Plaintiffs"); (3) the "Opposed Motion for Protective Order"[3] ("Motion for Protective Order") filed by Allstate; and (4) the self-styled "Verified Motion for Continuance of the Ruling on the Allstate Texas Lloyds' Motion for Summary Judgment"[4] ("Motion for Continuance") filed by Plaintiffs. These filings are accompanied by several related filings.[5] After considering the motions, responses, replies, record, and relevant authorities, the Court **DENIES** the Motion for Continuance, **GRANTS** the Motion for Summary Judgment, **DENIES** the Motion for Entry, and **DENIES** the Motion for Protective Order.

---

[1] Dkt. No. 18 ("Motion for Summary Judgment").
[2] Dkt. No. 11 ("Motion for Entry").
[3] Dkt. No. 24 ("Motion for Protective Order").
[4] Dkt. No. 23 ("Motion for Continuance").
[5] Dkt. Nos. 14 ("Entry Response"), 27 ("Protective-Order Response"), 22 ("Summary-Judgment Response"), 25 ("Summary-Judgment Reply"), & 26 ("Continuance Response").

I. **BACKGROUND**

Although this dispute has required several accountings of its "tortured history in state court,"[6] the instant filings require a brief re-visitation of those pre-removal facts. On June 1, 2012, the original plaintiffs filed this action in state court, with the now-severed parties intervening with similar but separate claims.[7] On August 28, 2012, the original plaintiffs and intervenors filed notices of non-suit,[8] which were granted on September 19, 2012.[9] Six short days later, on September 25, 2012, the original plaintiffs and intervenors moved for reinstatement of the action,[10] which was granted by the trial court on September 26, 2012.[11] During that mysterious and brief hiatus, Plaintiffs invoked the appraisal clause of the policy on September 21, 2012.[12] Broadly speaking, the appraisal provision provides that, upon disagreement as to the amount of loss, either party may elect to invoke a mutually-binding process in which the amount of loss is determined by the agreement of appraisers nominated by each party or, in the event the appraisers do not agree, by agreement of one appraiser and an umpire jointly chosen by the appraisers.[13]

---

[6] *See* Dkt. No. 19 in *Garcia et al v. Allstate Texas Lloyds*, 7:12-cv-391 (references to docket entries from this case will be accompanied by the prefix "Pre-severance.").
[7] Pre-severance Dkt. No. 1, Attachs. 10, 13, 15, 17, & 19.
[8] Pre-severance Dkt. No. 1, Attachs. 21-25.
[9] Pre-severance Dkt. No. 1, Attachs. 28-31 & 34.
[10] Pre-severance Dkt. No. 1, Attachs. 32 & 35.
[11] Pre-severance Dkt. No. 1, Attach. 37.
[12] Motion for Summary Judgment, Attach. 1 at p. 2.
[13] *See* Motion for Summary Judgment, Attach. 6 ("Policy") at p. 24, ¶ 7. The full text of the appraisal clause provides as follows:
    7. Appraisal. If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. If you or we request that they do so, the appraisers will also set:
        a. the full replacement cost of the dwelling.
        b. the full replacement cost of any other building upon which loss is claimed.
        c. the full cost of repair or replacement of loss to such building, without deduction for depreciation.

The case was thereafter removed to this Court and, on November 27, 2012, the Court severed the state-court intervenors into separate actions.[14] The Court now sets forth the specific facts as to the instant Plaintiffs, who allege various claims, including breach of contract, fraud, breach of the duty of good faith and fair dealing, and violations of Chapters 541 and 542 of the Texas Insurance Code.

The appraisers of both parties thereafter agreed to the amount of loss[15] and, on May 23, 2013, it is undisputed that Allstate forwarded payment of the appraisal award, after subtracting deductible and prior payments, to Plaintiffs through counsel.[16] On May 29, 2013, payment was returned by Plaintiffs' counsel because the appraisal award did not "account for penalties or interest based on Allstate's underpayment of the claim . . . ."[17]

Then the parties filed the instant motions, among which the motion for summary judgment should prudentially be considered first, due to its potential impact on the motion for protective order and the motion for entry of a scheduling order. However, the Court first considers Plaintiffs' motion to continue consideration of the motion for summary judgment, before considering the summary-judgment merits.

## II.   MOTION FOR CONTINUANCE[18]

In the motion for continuance, Plaintiffs seek continuance of the Court's consideration of the motion for summary judgment. In support of this request, Plaintiffs cite to *International*

---

      If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.
      Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

[14] Pre-severance Dkt. No. 19 & Dkt. No. 1.
[15] Motion for Summary Judgment, Attach. 3. The appraisal award established the following amounts: an actual cash value for the dwelling loss of $6,720.23, with a replacement cost of $10,333.46.
[16] *See* Motion for Summary Judgment, Attach. 4.
[17] Motion for Summary Judgment, Attach. 5 at p. 2.
[18] *See* Motion for Continuance.

*Shortstop, Inc., v. Rally's Inc.*,[19] for the proposition that "[a] continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course."[20] However, the *International* Court also noted that "[t]he nonmoving party must show how the additional discovery will defeat the summary judgment motion, that is will create a genuine dispute as to a material fact, and 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts.'"[21] In turn, the *International* Court provided that "[i]f the additional discovery will not likely generate evidence germane to the summary judgment motion, the district court may, in its discretion, proceed to rule on the motion without further ado."[22] The Fifth Circuit's guidance is consistent with the plain language of Rule 56(d), under which relief is not warranted if either (1) the proffered basis does not present a reasonable likelihood that further discovery would produce evidence creating a fact issue,[23] or (2) such evidence would not create fact issues for each essential element of the nonmovant's claim.[24]

    As their evidentiary basis, Plaintiffs proffer the need for documentation, including Allstate's claim file and corporate policy on appraisal. First, this documentation fails to satisfy the Rule-56(d) requirements since Plaintiffs do not provide any basis for their entitlement to this evidence. The Court rejects the argument that Allstate is required to produce the claim file as part of the initial disclosures under Federal Rule of Civil Procedure 26, as the scope of Rule-26

---

[19] 939 F.2d 1257 (5th Cir. 1991).
[20] *See* Motion for Continuance at ¶ 12.
[21] *See International Shortstop, Inc.*, 939 F.2d at 1267 (citing Washington v. Allstate Insurance Co., 901 F.2d 1281, 1286 (5th Cir. 1990); SEC v. Spence & Green Chemical Co., 612 F.2d 896, 901 (5th Cir. 1980), *cert. denied*, 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981)).
[22] *See id.* (citations omitted).
[23] Beverly v. Wal-Mart Stores, Inc., 428 F.App'x 449, 451 (5th Cir. 2011) ("If it reasonably appears that further discovery would not produce evidence creating a genuine issue of material fact, the district court's preclusion of further discovery prior to entering summary judgment is not an abuse of discretion.") (quoting Resolution Trust Corp. v. Sharif–Munir–Davidson Dev. Corp., 992 F.2d 1398, 1401 (5th Cir. 1993)).
[24] *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's cause necessarily renders all other facts immaterial.")

disclosures is subjectively defined by the producing party, and only extends to those documents or witnesses that the producing party *intends* to use.[25]

In addition to the documentation, Plaintiffs assert their inability to respond absent deposition testimony of the adjusters, corporate representative, and "person who made the final decision denying Plaintiffs' claim," explaining that such depositions are "the only way to ferret out the reasons behind the wrongful undervaluing of and ultimately the wrongful denial of Plaintiffs' claim."[26]

This evidentiary basis does not create a reasonable likelihood that it would create a fact issue. First, as Plaintiffs recognize, an appraisal award has already determined the amount of loss in this case. The Court discusses the implications of the appraisal award on the breach of contract claim below. Beyond any effect of the appraisal award on the breach of contract claim, Plaintiffs assert the need for additional discovery to support any of the three exceptions to the general rule that an insured may not prevail on a bad-faith claim without first showing breach of the insurance contract; without such discovery, Plaintiffs assert "they are unable to seek any expert opinions in this matter."[27] The Court discusses the exceptions below and specifically addresses the ineffectiveness of the asserted evidence in creating a fact issue preventing summary judgment.[28] On the basis of the standard discussed above, and the reasons more fully set forth below, the Court finds that continuance of the summary judgment consideration is properly denied.[29] The Court now proceeds to the merits of the motion for summary judgment.

---

[25] *See* FED. R. CIV. P. 26(a)(1)(A)(ii) & cmt. 2000 Amendments, subdivision (a)(1) (providing (1) that "[t]he initial disclosure obligation of subdivisions (a)(1)(A) and (B) has been narrowed to identification of witnesses and documents that the disclosing party may use to support its claims or defenses[;]" and (2) defining "may use" as either actual or intended use).
[26] Motion for Continuance at ¶ 20.
[27] Motion for Continuance at ¶ 16.
[28] *See* III.B.ii, *infra*.
[29] The Court also notes that Plaintiffs have had at least one-and-a-half years to develop the facts to support those claims. Importantly, even before filing, and as pertinent here, Rule 13 of the Texas Rules of Civil Procedure

### III. MOTION FOR SUMMARY JUDGMENT

#### A. Legal Standard

In a summary judgment analysis under Federal Rule of Civil Procedure 56, the Court considers evidence from the entire record, and views that evidence in the light most favorable to the non-movant.[30] Thus, although the Court refrains from determinations of credibility and evidentiary weight, the Court nonetheless gives credence to all evidence favoring the non-movant; on the other hand, regarding evidence that favors the movant, the Court gives credence to evidence that is uncontradicted and unimpeachable, but disregards evidence the jury is not required to believe.[31]

Viewing the evidence in that manner, summary judgment is proper where two conditions are met: first, the movant must show that the evidence presents no genuine issues of material fact and, second, the movant is entitled to a judgment as a matter of law.[32] In the context of the first criteria, a fact is "material" if its resolution could affect the outcome of the action,[33] while a "genuine" issue is present "only if a reasonable jury could return a verdict for the non-movant."[34] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."[35]

---

requires that a pleading be grounded in law and fact. Rule 11 of the Federal Rules of Civil Procedure has similar requirements. Here, it appears that Plaintiffs' extra-contractual claims, while based on well-established law, had little, if any, factual support. The Court reminds counsel that, while it is prudent to consider a checklist of cognizable claim in any given situation, a reasonable inquiry should also be made to determine whether the contemplated claims have factual support. Here, it appears counsel failed to make this inquiry.

[30] *See* Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000); *see also* FED. R. CIV. P. 56.
[31] *See id.*
[32] *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
[33] Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc., 482 F.3d 408, 411 (5th Cir. 2007).
[34] Fordoche, Inc. v. Texaco, Inc., 463 F.3d 388, 392 (5th Cir. 2006).
[35] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The movant bears the initial burden of showing the absence of a genuine issue of material fact.[36] In this showing, "bald assertions of ultimate fact" are insufficient.[37] Absent a sufficient showing, summary judgment is not warranted, the analysis is ended, and the non-movant need not defend the motion.[38] On the other hand, the movant is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of evidence.[39]

Finally, this Court's jurisdiction is invoked on the basis of diversity of citizenship.[40] This Court, *Erie*-bound, must adhere to grounds of relief authorized by the state law of Texas.[41] Absent a decision by a state's highest tribunal, the decisions by Texas courts of appeals are controlling "unless [the Court] is convinced by other persuasive data that the highest court of the state would decide otherwise."[42]

### B. Analysis

Allstate's argument in favor of summary judgment proceeds sequentially to address the claim for breach of contract before the extra-contractual claims, a rubric which the Court finds helpful for the analysis.

#### *i. Breach of Contract Claim*

The appraisal clause cited above bears significantly on the parties' disagreement. The parties do not dispute the contractual validity of the clause as a manner of resolving a dispute as to the amount of loss, and the Court emphasizes that such a dispute is an express condition

---

[36] *See Celotex Corp.*, 477 U.S. at 323.
[37] Gossett v. Du-Ra-Kel Corp., 569 F.2d 869, 872 (5th Cir. 1978).
[38] *See Celotex Corp.*, 477 U.S. at 323.
[39] *See id*. at 323-25; *see also* Transamerica Ins. Co. v. Avenell, 66 F.3d 715, 718-19 (5th Cir. 1995).
[40] Pre-severance Dkt. No. 1 at p. 3.
[41] *See* Exxon Co. U.S.A, Div. of Exxon Corp. v. Banque De Paris Et Des Pays-Bas, 889 F.2d 674, 676 (5th Cir. 1989); *see also* Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).
[42] *Id*. (quoting West v. AT&T, 311 U.S. 223, 237 (1940)) (internal quotation marks omitted).

precedent to invoking appraisal.[43] Allstate's primary argument is that, based on its compliance with the policy generally and with the appraisal provision specifically, Plaintiffs are estopped from asserting a breach of contract claim as a matter of law.[44] Plaintiffs do not dispute that the appraisal process is complete. Plaintiffs' challenge is instead to the estoppel effect on their breach of contract claim.[45]

The parties' arguments conflate the pertinent principles, which the Court now isolates: (1) a disagreement as to the amount of loss might serve as a basis for a breach of contract claim; (2) resolution of that disagreement through the contractually-provided appraisal process is a benefit to both parties; and (3) upon resolution through the appraisal process, either party may assert estoppel as an affirmative defense against claims for breach of contract based on disagreement as to the amount of loss.[46] Thus, Allstate may prevail if the Court determines that completion of the appraisal process negates a breach of contract claim as a matter of law or that Plaintiffs fail to raise an issue of material fact on Allstate's assertion of estoppel.

In *Amine v. Liberty Lloyds of Texas Ins. Co.*, a Texas court of appeals summarized the general jurisprudential tenets of appraisal clauses as follows:

> The purpose of an appraisal clause is to provide a binding, extra-judicial remedy for any disagreement regarding the amount of the loss. Appraisal awards made under the provisions of an insurance contract are binding and enforceable, and a court will indulge every reasonable presumption to sustain an appraisal award. The effect of an appraisal provision is to estop one party from contesting the value of damages in a suit on the insurance contract, leaving only the question of liability for the court.[47]

---

[43] *See* fn. 13, *supra* (providing "*[i]f* you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, . . .") (emphasis added).
[44] *See* Motion for Summary Judgment at III.D.
[45] *See* Summary-Judgment Response at VI.A.
[46] *See* Hennessy v. Vanguard Ins. Co., 895 S.W.2d 794, 797-98 (Tex. App.—Amarillo 1995, writ denied) ("The effect of an appraisal award is to estop one party, here the plaintiff, from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court. As with other affirmative defenses, it is the defendant's burden to raise the issue of estoppel . . . .").
[47] Amine v. Liberty Lloyds of Texas Ins. Co., 01-06-00396-CV, 2007 WL 2264477 (Tex. App.—Houston [1st Dist.] Aug. 9, 2007) (quoting Breshears v. State Farm Lloyds, 155 S.W.3d 340, 344 (Tex. App.—Corpus Christi 2004,

Before delving further into the analysis, the Court notes that the question of liability is already answered. Although Plaintiffs aver in their response that "Defendant has not admitted liability," they also state that "here coverage has not been disputed by Defendant" and further cite to no evidence of Allstate disputing liability or coverage.[48] It is true that the parties disputed the amount of loss, giving rise to the appraisal process, but the evidence before this Court does not indicate that Allstate ever disputed coverage or liability.

As recognized by the Fifth Circuit in *Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyds London*, the Texas Supreme Court has held that estoppel of a breach of contract claim by appraisal is effective where a defendant can show three elements: (1) the existence and enforceability of an appraisal award; (2) the timely payment of the award; and (3) the acceptance of the appraisal award.[49] The first and second elements are undisputed, and Plaintiffs attack the third element, *i.e.* acceptance of the award, by asserting that Plaintiffs' non-acceptance of Allstate's tender of the appraisal award prevents estoppel.[50] In doing so, Plaintiffs cite language from a district court decision, *Church of the Rock North v. Church Mut. Ins. Co.*, providing that estoppel via appraisal only results where the plaintiff accepts payment of the appraisal amount from the insurer.[51]

---

pet. denied)) (citing In re Allstate Cty Mut. Ins. Co., 85 S.W.3d 193, 195 (Tex. 2002); Franco v. Slavonic Mut. Fire Ins., 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (internal quotations omitted).

[48] *See* Summary-Judgment Response at ¶¶ 25 & 42.

[49] Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyds London, 459 F. App'x 366, 368 (5th Cir. 2012) (citing Blum's Furniture Co. v. Certain Underwriters at Lloyds *368 London, 2011 WL 819491, *1, *3 (S.D.Tex.2011) (quoting Franco v. Slavonic Mut. Fire Ins. Ass'n, 154 S.W.3d 777, 787 (Tex. App.—Houston [14th Dist.] 2004)) (internal quotations omitted) ("[W]hen an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is estopped by the appraisal award from maintaining a breach of contract claim against [the insurer].")).

[50] *See* Summary-Judgment Response at ¶¶ 18, 30-31. Although Plaintiffs claim that Allstate violated the Texas Insurance Code by failing to promptly pay the claim, the allegations of delay do not relate to the period between Allstate's receiving notice of the appraisal award and Allstate's issuance of payment for the award; as a result, those allegations do not relate the payment requirement of estoppel.

[51] *See* Summary-Judgment Response at ¶ 30 (citing Church of the Rock v. Church Mut. Ins. Co., --- F.Supp.2d ----, 2013 WL 497879 (N.D. Tex. Feb. 11, 2013).

However, the *Church of the Rock* requirement of acceptance for estoppel effectiveness was due to distinguishable facts of that case, including retention-of-rights language in the appraisal clause and a factual dispute regarding the binding and enforceable effect of the appraisal award; Plaintiffs here assert no similar challenges.[52] Instead, Plaintiffs (1) agree that the contractual appraisal clause is a valid agreement between the parties; (2) invoked the appraisal clause; and (3) do not challenge the validity of the award, which was agreed to by Plaintiffs' designated appraiser.

In this context, the Court briefly notes that, although Plaintiffs have rejected the tender of the award, the rejection was not based on the validity of the award, or even Allstate's calculations related to that award. Instead, the only rejection basis expressed by Plaintiffs, at the time of rejection and again in their response to the motion for summary judgment, is the omission of payment for extra-contractual penalties and interest, as well as litigation-related attorneys' fees.[53] As noted above, appraisal is a contractual method of setting the contractual amount of loss, so an appraisal's failure to set the amount of extra-contractual penalties and interest is not grounds for rejecting payment. Even more clearly, Texas jurisprudence recognizes appraisal as *extrajudicial*, *i.e.* capable of execution without litigation, attorneys, and associated fees.[54] In this case, Plaintiffs voluntarily chose to take extra-contractual, judicial actions, despite the availability of contractual, extrajudicial means of resolution; simply put, the latter does not

---

[52] *See id.* at *7-8.

[53] *See* Motion for Summary Judgment, Attach. 5 (noting that the action was "in litigation" and the appraisal-payment failed to include "penalties or interest based on Allstate's underpayment of the claim . . . ."); *see also* Summary-Judgment Response at ¶ 51 (describing insufficiency of the appraisal award due to omission of "the correct amounts for damages, interest, and attorney's fees.").

[54] *See* fn. 47, *supra* (emphasis added). While the appraisal clause does allow the policy signatories to seek appointment of an umpire from the Court where the appraisers disagree, this judicial involvement is highly-limited and, in this case at least, ultimately unnecessary.

accommodate Plaintiffs' choice of the former, despite Plaintiffs' repeated, unsupported statements that they were "forced" into filing suit.[55]

As a result, the award itself is still binding and enforceable until it is set aside, notwithstanding Plaintiffs' unexplained and apparently-baseless rejection of Allstate's tender. Regarding a factually-similar situation in *Toonen v. United Servs. Auto. Ass'n*, a Texas court of appeals rejected a similar argument, writing:

> In this case, USAA's motion and supporting proof are legally sufficient to establish (1) Toonen's claim had been appraised pursuant to the Policy, and (2) USAA had tendered the amount awarded by the appraisers. Accordingly, USAA was entitled to summary judgment in its favor on Toonen's breach of contract claim unless Toonen raised an issue of fact as to a ground for setting aside the appraisal award.[56]

Plaintiffs here have alleged no factual difference which would result in a different outcome.

Finally and only through the Court's most favorable construction of the allegations in their response, Plaintiffs appear to assert that Allstate cannot rely on estoppel where there is a discrepancy between the initial estimate and the ultimate appraisal award. In asserting this basic concept, Plaintiffs' reasoning takes a circuitous route: the discrepancy between the estimate and the appraisal amount results in a breach of the duty of good faith and fair dealing, which in turn results in a breach of contract.[57]

First, as more fully set forth below, the potential impact of estoppel on extra-contractual claims shows that Plaintiffs' reasoning puts the proverbial cart before the horse. Second, Texas jurisprudence rejects the practical effect of Plaintiffs' rationale, which would make a discrepancy which is anticipated by the terms of a contract to be dispositive of a breach of contract, and

---

[55] *See* Summary-Judgment Response at ¶¶ 30 & 46.
[56] Toonen v. United Servs. Auto. Ass'n, 935 S.W.2d 937, 940 (Tex. App.—San Antonio 1996, no writ).
[57] *See* Summary-Judgment Response at ¶ 23.

Texas law clearly states that such discrepancy is not even probative, and cannot be used as evidence of breach of contract. In *Breshears v. State Farm Lloyds*, a Texas court of appeals held:

> [Plaintiffs] may not use the fact that the appraisal award was different than the amount originally paid as evidence of breach of contract, especially when the contract they claim is being breached provides for resolution of disputes through appraisal.[58]

Here, the language of the appraisal clause, as in *Breshears*, describes disagreement as to the amount of loss as a condition precedent to the appraisal process, rendering the asserted discrepancy an immaterial fact issue for a breach of contract claim. The Court notes that one of the decisions attached to Plaintiffs' response, *Intermodal Equipment Logistics, LLC et al v. Hartford Accident and Indemnity Co.*, agrees with this interpretation of *Blum's Furniture Co.* and *Breshears*, and rejects the argument asserted in the response to which it is attached.[59]

With inexplicable reliance upon admittedly-inapplicable authority, Plaintiffs cite to *Republic Underwriters Ins. Co. v. Mex-Tex, Incorporated*,[60] for the proposition that an insurer is liable for breach of contract when the insurer underpays a claim.[61] Plaintiffs rely upon this case despite acknowledging, in the very next sentence, that the *Mex-Tex* Court was not considering an appraisal determination, which is the crux of Allstate's argument.[62] Plaintiffs then cite to *In re Universal Underwriters of Tex. Ins. Co.*[63] to support the idea that a breach of contract necessarily results if the appraisal award and offer do not match. That case does not stand for the leap asserted by Plaintiffs, a leap which Allstate accurately describes as "ignor[ing] the unique,

---

[58] *See Breshears*, 155 S.W.3d at 343.
[59] *See* Summary-Judgment Response, Attach. 3 at pp. 11-17.
[60] 150 S.W.3d 423 (Tex. 2004).
[61] *See* Summary-Judgment Response at ¶ 19.
[62] *See id*. Plaintiffs' argument for *Mex-Tex's* application to the appraisal context because "its holding was not limited to its facts" is unpersuasive, especially since the case to which Plaintiffs cite for its extra-factual application is not an appraisal-related decision.
[63] 345 S.W.3d 404, 407 (Tex. 2011).

contractually authorized dispute resolution procedure provided by the insurance policy."[64] It is unsurprising, then, that the Fifth Circuit's later decision in *Blum's Furniture Co.*, directly citing both *Breshears* and *In Re Universal,* recognized no inconsistency with their holdings.[65]

For these reasons, the Court finds that Allstate's compliance with the appraisal provision and timely tender estop Plaintiffs' breach of contract claim, warranting dismissal of the breach of contract claim.

### ii. *Extra-Contractual Claims*

Allstate next argues that two of Plaintiffs' extra-contractual claims, breach of the duty of good faith and fair dealing and violations of Chapters 541 and 542 of the Texas Insurance Code, are derivatively precluded by the appraisal and resultant estoppel on her breach of contract claim. The Court commences its analysis of this argument by recognizing the principle that "in most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract."[66] Under Texas law, the common-law bad faith standard for breach of the duty of good faith and fair dealing is imputed to statutory liability under Chapter 541 of the Texas Insurance Code;[67] that is, both claims share the same predicate for recovery, such estoppel is equally dispositive.[68]

In light of the Court's determination that the breach of contract claim fails as a matter of law, Plaintiffs' common law or statutory bad faith claims survive the summary analysis only if Plaintiffs raise a genuine issue of material fact as to either of two exceptions recognized in *Republic Ins. Co. v. Stoker*: (1) the insurer's failure to timely investigate the insured's claim; or

---

[64] Summary-Judgment Reply at p. 2.
[65] *See Blum's Furniture Co.*, 459 F. App'x. at 369.
[66] Liberty Nat. Fire Ins. Co. v. Akin, 927 S.W.2d 627, 629 (Tex. 1996) (citing Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 341 (Tex. 1995); Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 17 (Tex. 1994)).
[67] Texas Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc., 324 S.W.3d 305, 317 (Tex. App.—El Paso 2010, review denied) (citing Progressive County Mut. Ins. Co. v. Boyd, 177 S.W.3d 919, 922–23 (Tex. 2005) (per curiam)).
[68] *See* Higginbotham v. State Farm Mut. Auto. Ins. Co., 103 F.3d 456, 460 (5th Cir. 1997).

(2) the insurer's commission of "some act, so extreme, that would cause injury independent of the policy claim."[69] As a result, and as recognized by the Fifth Circuit in *Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyds London*, a plaintiff "cannot maintain an action for bad faith where the breach of contract claim fails, and neither exception applies."[70]

Plaintiffs do not challenge the applicability of the principles recognized by the *Blum's Furniture Co.* Court, and instead assert that evidence supports one of the *Stoker* exceptions.[71] While Plaintiffs first assert that Allstate failed to timely investigate the claim, this exception is fatally undercut by both the allegations in their amended complaint and Plaintiff Rigoberto Hernandez' affidavit. In their amended complaint, Plaintiffs allege that the property damage occurred on March 29, 2012, and that Allstate's adjuster visited the property and completed the estimate by April 5, 2012.[72] In addition, the affidavit, which is the only evidence to which Plaintiffs cite to support untimely investigation, establishes that Plaintiff Rigoberto Hernandez called Allstate and made a claim "immediately" after the hailstorm and that "shortly after that" an adjuster inspected the property and produced estimates.[73] Far from supporting the *Stoker* exception, the affidavit precludes even a "reasonable inference" creating a supporting fact issue.

Plaintiffs also assert that the extreme-act *Stoker* exception applies in this case due to "Defendant's intentional[,] unreasonable investigation and underpayment."[74] Plaintiffs, however, offer no facts to support this claim.[75] In the absence of any factual support, the Court refrains from addressing this claim. Furthermore, the Court notes that the Fifth Circuit in *Mid-Continental Cas. Co. v. Eland Energy, Inc.*, wrote the following:

---

[69] Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 341 (Tex. 1995).
[70] *See Blum's Furniture Co.*, 459 F. App'x at 369 (affirming summary judgment on that basis as to the breach of contract and extra-contractual claims) (citing *Akin*, 927 S.W.2d at 629; *Stoker*, 903 S.W.2d at 341).
[71] *See* Summary-Judgment Response at ¶ 43.
[72] *See* Dkt. No. 3 at ¶ 11.
[73] *See* Summary-Judgment Response, Attach. 1 ("Affidavit") at p. 1.
[74] Summary-Judgment Response at ¶ 45.
[75] Plaintiffs cite to the affidavit of Rigoberto Hernandez but such affidavit does not address this claim.

> The *Stoker* language has frequently been discussed, but in seventeen years since the decision appeared, no Texas court has yet held that recovery is available for an insurer's extreme act, causing injury independent of the policy claim, in the first-party claim context, let alone in the third-party claim context. Such case history does not a yield a sound foundation for an *Erie* guess . . .[76]

This Court will not hazard an *Erie* guess where the Fifth Circuit has refrained. Even were the Court to hazard such an *Erie* guess, the Fifth Circuit's rejection of the extreme-act exception in *Blum's Furniture Co.* augers against a favorable resolution for Plaintiffs, since that court was considering highly-similar factual allegations and legal arguments.[77]

Further challenging the proposition that a breach of contract claim is a prerequisite to maintaining extra-contractual claims, Plaintiffs cite to several nonpersuasive cases. In one of those cases, *Essex v. Helton et al*, the court did not consider the impact of the appraisal award on the plaintiffs' claims, but instead merely considered the validity of the appraisal award; the case simply does not speak to the issue.[78] The other three cases which Plaintiffs provide contain no factual description or legal reasoning and, while potentially persuasive against Plaintiffs' simplistic, straw-man description of Allstate's position,[79] the cases are wholly unpersuasive against Allstate's actual position, as previously described by the Court.[80] Finally, although the *Intermodal* decision concluded that the plaintiff had alleged sufficient facts to satisfy *Stoker's* independent-tort exception, this Court reiterates its exercise of *Erie* prudence in refraining from doing likewise, especially in light of the absence of factual allegations supporting the requisite "extremity" or "independence" of Allstate's actions.[81]

---

[76] 709 F.3d 515, 521-22 (5th Cir. 2013).
[77] *See Blum's Furniture Co.*, 459 F. App'x. at 369 (noting that, insurer inspected the property within the statutory period and obtained damage estimates from two adjusters).
[78] *See* Summary-Judgment Response at ¶ 54 & Attach. 3 at pp. 7-10.
[79] *See e.g.,* Summary-Judgment Response at ¶¶ 18 (describing Allstate's argument as "any wrongdoing to Plaintiffs was magically absolved by appraisal"), 29 (describing Allstate's argument as "entitlement to absolution through appraisal").
[80] *See* Summary-Judgment Response at ¶ 53 & Attach. 3 at pp. 1-6.
[81] *See* Summary-Judgment Response, Attach. 3 at pp. 16-17.

Finally, the Court addresses the summary judgment arguments as to Plaintiffs' fraud claim. Among other elements, Texas law requires that a party asserting a fraud claim must show reliance upon a misrepresentation, as well as resulting injury suffered by the party.[82] As the operative misrepresentation undergirding their fraud claim, Plaintiffs proffer Allstate's initial estimate of the damages.[83] However, Plaintiffs fail to demonstrate their reliance, or their injury as a result of that reliance. To the contrary, Plaintiffs repeatedly aver their disagreement with Allstate's representations in the initial estimate, and Plaintiffs' subsequent invocation of the appraisal provision speaks to their continuing "dispute," a prerequisite to invoking appraisal. As a result, the Court finds that Plaintiffs have failed to raise a genuine issue of material fact for essential elements of this claim.

### iii. Conclusion

Due to Allstate's compliance with the appraisal provision, Plaintiffs are estopped from asserting a breach of contract claim as a matter of law. Furthermore, Plaintiffs' extra-contractual claims for breach of the duty of good faith and fair dealing, as well as statutory violations, do not survive absent the breach of contract claim, as Plaintiffs have not supported with summary-judgment evidence either exception to the general requirement. Finally, Plaintiffs' fraud claim is fatally unsupported regarding reliance and damages. As a result, summary judgment as to all claims is warranted.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Allstate's motion for summary judgment and Plaintiffs' claims are **DISMISSED**. Accordingly, the Court **DENIES AS MOOT**

---

[82] Johnson & Higgins of Texas, Inc., v. Kenneco Energy, Inc., 962 S.W.2d 507, 515-16 (Tex. 1998).
[83] *See* Summary-Judgment Response at ¶ 58 Plaintiffs' tri-partite description of the representation is more expansive, referencing the initial estimate as a misrepresentation of damages covered, damages not covered, and the damage calculation method; for the purposes of this analysis, however, it suffices to identify the parts by the whole.

the remaining motions for protective order and for entry of a scheduling order. A final judgment will issue separately.

    IT IS SO ORDERED.

    DONE this 7th day of February, 2014, in McAllen, Texas.

                                                      _____
                                                        Micaela Alvarez
                                        UNITED STATES DISTRICT JUDGE